## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **CRIMINAL NO.  06-151 (HHK)** |
| | **:** | |
| | **:** | **Motions: December 1, 2006** |
| **KEVIN EATON,** | **:** | |
| | **:** | |
| **Defendant.** | **:** | |
| _____ | **:** | |

## UNITED STATES' OPPOSITION TO MOTION TO SUPPRESS
## STATEMENTS AND PHYSICAL EVIDENCE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its opposition to the Motion to Suppress Statements and Physical Evidence and Incorporated Memorandum in Support Thereof and Request for Evidentiary Hearing (Motion to Suppress).  In support, the United States would show the following:

### FACTUAL BACKGROUND

1.  A couple of minutes past midnight on May 4, 2006, two officers with the Metropolitan Police Department entered the parking lot at 828 Barnaby Street, S.E., Washington, D.C.  Although they were driving an unmarked vehicle, they were in full uniform.  The parking lot was known to the officers to be a high narcotics trafficking area.

2. As they were driving through the parking lot, the officers observed the defendant leaning on the hood of a white Cadillac Deville.  The defendant appeared to be holding an open container of alcohol.  The police stopped their vehicle in front of the defendant, exited, and started to approach the defendant.  As the officers approached, the defendant attempted to get in his vehicle.  However,

the officers were able to stop the defendant before he got completely into the vehicle.  The defendant

was stopped for possessing an open container of alcohol.

3.  The police observed a 9mm Beretta handgun in the map pocket of the driver's door.  The

gun was loaded with 16 rounds of ammunition.  When the defendant observed the police remove the

handgun from the vehicle, the defendant spontaneously stated "I'm gonna beat this in court."  The

gun later was determined to be operable.

4.  After the defendant was transported to the police station, the defendant was advised on

his rights by Detective Anthony Greene of the Metropolitan Police Department and the defendant

gave a videotaped statement.  Specifically, Detective Greene executed a PD 47, which is a waiver

form used by the police, with the  the defendant which stated:

1.  Have you read or had read to you the warning as to your rights?

2.  Do you understand these rights?

3.  Do you wish to answer any questions?

4.  Are you willing to answer any questions without having an attorney present?

The defendant answered "yes" to each one of these questions.  A copy of the PD 47 is attached

hereto as Exhibit 1.

5.  The defendant's motion seeks to have the evidence suppressed by arguing that the police

does not have probable cause to stop the defendant.  Motion to Suppress, pp 2-4.  The defendant is

wrong because the police had not stopped the defendant until he was in the process of getting into

his vehicle.  However, at the time of the stop, the police had an articulable suspicion that the

defendant was engaged in criminal behavior when they observed him with what appeared to be an

open container of alcohol and he then attempted to flee from the presence of the police, and they

were permitted to conduct a <u>Terry</u> stop.  At that point, moreover, the gun possessed by the defendant was in plain view in the map pocket of the defendant's vehicle.  The motion also broadly argues that the defendant's statements should be suppressed because the defendant did not give a voluntary waiver of his right to remain silent.  Motion to Suppress, pp. 4-6.  Without giving any basis, the motion simply asserts that the defendant was not adequately advised of his rights and that his waiver was not knowing, voluntary and intelligent.  <u>Id</u>.  As reflected on the PD 47 signed by the defendant, the defendant was advised of each and every one of his rights.  Therefore, all of the defendant's arguments fail and the motion must be denied.

## <u>ARGUMENT</u>

The Motion to Suppress Should Be
Denied Because The Defendant's
<u>Fourth Amendment Rights Were Not Violated</u>

6.  First, it is important to note that the defendant was seized by the police until they stopped him as he was physically entering his vehicle.  A seizure of a person occurs only when either the police use physical force against the person, or the person submits to a display of police authority sufficient to cause a reasonable person to believe that he or she was not free to terminate the encounter with the police.  <u>California v. Hodari</u>, 111 S.Ct. 1547 (1991).  It is not a seizure when the police simply approach a person, ask questions, ask for identification, or request consent to search. <u>Florida v. Bostick</u>, 111 S.Ct. 2382 (1991).  Here, prior to actually stopping the defendant as he was getting into his vehicle, the police engaged in no conduct that would amount to a seizure of the defendant.  The officers simply stopped their vehicle and exited in an effort to determine whether the container in the defendant's hands did have alcohol in it.  Indeed, the record will show that the defendant did not submit to the police presence and attempted to flee the area by getting in his

vehicle and driving away.  It was only at that point that the police physically stopped the defendant.  However, as discussed below, the police had a sufficient basis to conduct a <u>Terry</u> stop.

7.  It is well established that the police may make a brief investigative detention of a person when they have an articulable suspicion that criminal behavior is afoot.  <u>Terry v. Ohio</u>, 392 U.S. 1 (1968); <u>United States v. Edmonds</u>, 240 F.3d 55, 59 (D.C. Cir. 2001)("the issue is whether a reasonably prudent man in the circumstances would be warranted in his belief that the suspect is breaking, or about to break the law").  This is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. . . . [It] requires only a minimal level of objective justification and an officer may initiate one not based on a certainty, but on the need to "check out" a reasonable suspicion.'  <u>United States v. Broadie</u>, 452 F.3d 875, 879 (D.C. Cir. 2006)(internal citations omitted).  The inquiry requires an assessment of the totlality of the circumstances as the officer experienced them.  <u>Id</u>.  Here, in light of the facts and circumstances that they encountered on May 4, 2006, the officers had an articulable suspicion that the defendant may have been engaged in the criminal behavior.

8.  Only a few minutes past midnight, the officers entered the parking lot on Barnaby Street and observed the defendant leaning on the hood of his vehicle.  The officers observed the defendant holding a container with a fluid inside, and thus it appeared to the officers that the defendant was holding an open container of alcohol.  As the officers got out of their unmarked vehicle to check out their suspicions, the defendant then observed that they were police officers and he suddenly attempted to leave the scene.  The police did not have to be certain that the container had alcohol, only that it is was a reasonable probability.  <u>Id</u>.  A reasonable police officer, experiencing these set of circumstances, would be warranted in believing that the defendant had an open container of

alcohol as he was hanging out in the parking lot, and that he tried to flee the scene when he realized that the police were about to catch him with that container.  See <u>Illinois v. Wardlow</u>, 528 U.S. 119 (2000)(unprovoked flight from the police can give rise to an articulable suspicion for a stop).  For these reasons, <u>i.e.</u>, the officers' observation of what appeared to be an open container of alcohol and then the defendant's sudden efffort to flee the scene, the police were justified in briefing detaining the defendant so that they could investigate whether or not the defendant's container actually had alcohol.

9.  With this justification for a <u>Terry</u> stop, the police were permitted to briefly detain the defendant and prevent him from continuing to get in his vehicle.  <u>Pennsylvania v. Mimms</u>, 98 S.Ct. 330 (1977)(allowing the police to remove suspect from vehicle pending brief detention).

10.  Noteworthy, it was the defendant who had opened the door to his vehicle and not the police.  Although the police may have been authorized to have open the door themselves, the record here will demonstrate that it was the defendant who had opened the door and that it was opened when the police stopped the defendant to investigate the container.

11.  Further, the plain view doctrine authorized the police to seize the handgun.  The plain view doctrine makes a seizure lawful if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the object was viewed, (2) the object incriminating character was immediately apparent, and the officer had a lawful right of access to the object being seized.  <u>California v. Horton</u>, 110 S.Ct. 2301 (1990).  Here, the police were acting lawfully when they detained the defendant to investigate the nature of the contents of the container and the unlawful nature of a handgun in the District of Columbia was immediately apparent.  Moreover, because it was the defendant who opened the door and was attempting to get in the vehicle, the police had

lawful access to the location from which they were able to observe the handgun.  In short, because the Beretta was located in the map pocket of the vehicle and the door was open, it was in plain view and the police did not violate the defendant's Fourth Amendment rights.

The Motion to Suppress Should Be<br>
Denied Because The Defendant<br>
<u>Voluntarily Waived His Right To Remain Silent</u>

12.  The Court should also reject the defendant's argument that his statements to Detective Greene should be suppressed.  The Motion to Suppress does not even address the fact that the defendant was advised of his rights and voluntarily waived those rights in writing.   A copy of the waiver is attached hereto as Exhibit 1.  Likewise, the motion completely fails to articulate any basis for believing that the defendant's waiver of his rights was somehow coerced.    Indeed, defendant does not set forth any sort of over-reaching by the police.  There is simply nothing to suggest that the defendant's waiver is not valid.

13.  The Supreme Court has held that statements made by an accused, while in police custody, are inadmissible unless the police, prior to questioning, warn him that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so chooses.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966).  For purposes of this motion, the United States concedes that the defendant was in custody and interrogated at the time he was questioned by Detective Greene.   The issue is whether the defendant knowingly, intelligently and voluntarily waived these rights.

14.  The United States bears the burden proving by a preponderance of the evidence that the defendant waived his rights and gave a statement to the police.  In making this determination, the

primary consideration for courts has been whether the statements resulted from police coercion. Thus, "[t]he voluntariness of a waiver of this privilege has always depended on the absence of police overreaching." Colorado v. Connelly, 479 U.S. 157, 170 (1986). In order to reduce the risk of a coerced statement, the accused must be apprised of his rights and the exercise of those rights respected. Missouri v. Seibert, 542 U.S. 600, 608-09 (2004). The admissibility of an accused's statements is generally conditioned on warning the accused of his rights. Id. "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver." North Carolina v. Butler, 441 U.S. 369, 373 (1979). In deciding whether an accused has waived his rights, court will employ an objective standard for evaluating the waiver, and take into consideration the defendant's education, experience and the conduct of the accused. United States v. Yunis, 859 F.2d 953, 965 (D.C. Cir. 1988). Employing these principles to the instant case, it is clear that the defendant gave a valid waiver of his rights after being properly advised by Detective Greene.

15. At the time of his waiver, the defendant was twenty-three years olds. In addition, the defendant had prior convictions for operating a vehicle with no permit in 2004CTF3998; Distribution of Cocaine in 2001Fel5015; and Carrying a Pistol Without a License (outside the home or business) in 2001Fel4816. The defendant had also been arrested on three other occasions. In short, the defendant was well into his adult years and was sophisticated about the criminal justice system.

16. Moreover, as reflected in Exhibit 1, the defendant was given warnings by Detective Greene that he has

> the right to remain silent. You are not required to say thing to us at any time or to answer any questions. Anything you say can be used against you in court.
>
> the right to talk to a lawyer for advice before we question you and to have him with you during questioning.

In addition, the defendant was advised that a lawyer would be appointed for him if he could not afford one on his own. Lastly, the defendant was advised that if he wanted to "answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer." In sum, the defendant was fully advised of his rights.

17. The defendant then went on to waive those rights by acknowledging that he had been advised of his rights, that he understood his rights, and agreeing to answer questions without a lawyer being present. See Exhibit 1. All of this is reflected on the defendant's PD 47. United States v. Gandy, 705 F. Supp. 31, 32 (D. D.C. 1989)(holding PD 47 to be evidence of waiver of rights).

18. The Motion to Suppress and record here gives absolutely no indication of coercion by the police. Indeed, the record demonstrates that the defendant, an adult familiar with the criminal justice system, was fully advised of his rights and agreed to waive those rights and answer Detective Greene's questions. Therefore, the Motion to Suppress should be denied in its entirety.

## <u>CONCLUSION</u>

Therefore, upon the foregoing facts and the authorities cited, the Court should deny the

Motion to Suppress in its entirety.

Respectfully,

KENNETH L. WAINSTEIN
United States Attorney


By: _____
MICHAEL T. TRUSCOTT
ASSISTANT UNITED STATES ATTORNEY
Member of the New York Bar
Federal Major Crimes Section
United States Attorney's Office
555 Fourth Street, N.W., Room 4237
Washington, D.C. 20530
Phone: (202) 514-7533
Fax: (202) 514-6010